UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA, )
         Plaintiff, )
vs. ) Case No. 1:18-cr-00281-EJL-1
GLOUDINA MARIA ROBBERTSE, )
         Defendant. )
_____)

CHANGE OF PLEA HEARING
HELD BEFORE THE HONORABLE EDWARD J. LODGE
AT BOISE, IDAHO
DECEMBER 06, 2018

A P P E A R A N C E S

FOR THE PLAINTIFF:

HEATHER PATRICCO, AUSA
United States Attorney's Office
800 East Park Boulevard
Suite 600
Boise, ID 83712

FOR THE DEFENDANT:

MELISSA WINBERG
Federal Defender Services of Idaho
702 West Idaho Street, Suite 100
Boise, ID 83702

Reported by:
Lisa K. Yant, CSR, RPR, CFRR
Official Court Reporter

P R O C E E D I N G S

December 06, 2018 – Boise, Idaho


THE CLERK:  The Court will now hear the change of plea for United States of America versus Gloudina Maria Robbertse, Case No. 1:18-cr-281-EJL.

Counsel, if you will please state your appearances for the record.

MS. PATRICCO:  Heather Patricco for the United States.

MS. WINBERG:  Good afternoon, Your Honor.  Melissa Winberg for Gloudina Robbertse.

THE COURT:  Thank you and good afternoon, Counsel.

Good afternoon, Ms. Robbertse.  How do you pronounce that?

THE DEFENDANT:  Robbertsen, but without the N.

THE COURT:  Ma'am, the Court has been advised that you desire to appear before the Court in the absence of the jury for the purpose of withdrawing previous pleas of not guilty to Counts 15 and 33 in the Indictment charging wire fraud and aggravated identity theft, and for the purpose of entering pleas of guilty to those two charges pursuant to certain plea negotiations and dismissal of other charges; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Before the Court can allow you to do that, I need to ask you a few questions.  I would like to do that when

1    you are under oath.  So if you have no objection, please stand,

2    raise your right hand and be sworn by the clerk.

3              GLOUDINA MARIA ROBBERTSE, DEFENDANT, SWORN

4              THE COURT:  Ma'am, your answers to my questions will

5    now be subject to the penalties of perjury and/or making a false

6    statement if you would intentionally falsify an answer.  I don't

7    expect that to happen, but I want you to be aware of it.  So if

8    you don't understand the Court, just ask the Court to repeat the

9    question or visit with your counsel before you answer.  Okay?

10             THE DEFENDANT:  Okay.

11             THE COURT:  For the record, ma'am, how old are you?

12             THE DEFENDANT:  Forty-nine, sir.

13             THE COURT:  And the extent of your formal education?

14   How far did you go in school?

15             THE DEFENDANT:  I have a master's degree in business.

16             THE COURT:  So in your discussions with your counsel,

17   you felt you understood what she was advising you of?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  You have had adequate time to be with your

20   counsel before you made your appearance here today?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Are you satisfied, then, in all respects

23   with the services of your counsel?

24             You will need to answer out loud.

25             THE DEFENDANT:  Yes, sir.

1    THE COURT:  During the last 24 hours, have you taken

2 any medication, any drugs, prescribed or otherwise, that would

3 have any bearing on your ability to understand the nature of

4 these proceedings?

5    THE DEFENDANT:  No, sir.

6    THE COURT:  Now, ma'am, you received copies of the two

7 charges that we are talking about and you have gone over those

8 with counsel; have you not?

9    THE DEFENDANT:  Yes, sir.

10    THE COURT:  Do you feel you understand what you have

11 been charged with?

12    THE DEFENDANT:  Yes, sir.

13    THE COURT:  Nevertheless, I am going to ask

14 Ms. Patricco to again advise you not only as to the nature of

15 the charges, but more importantly, the elements that have to be

16 proven beyond a reasonable doubt before you could be found

17 guilty, and then to give you a short statement concerning what

18 the government's evidence would be to establish your guilt.

19    A little later in this proceeding I will ask you if

20 you agree with that summary.  So listen to Ms. Patricco, please.

21    MS. PATRICCO:  Thank you, Your Honor.

22    May it please the Court.

23    THE COURT:  Counsel.

24    MS. PATRICCO:  The elements of the crime of wire

25 fraud, 18 United States Code Section 1343 as charged in Count 15

of the Indictment, are as follows:

First, the defendant knowingly participated in, devised, and intended to devise, a scheme to plan to defraud or a scheme for obtaining money or property by means of false or fraudulent pretenses, representation or promises;

Second, the statements made or facts omitted as part of the scheme were material.  That is, they had a natural tendency to influence or were capable of influencing a person to part with money or property;

Third, the defendant acted with the intent to defraud. That is, the intent to deceive or cheat;

And fourth, the defendant used or caused to be used a wire communication to carry out or attempt to carry out an essential part of the scheme.

The elements of the crime of aggravated identity theft under 18 United States Code Sections 1028A and 2, as charged in Count 33 of the Indictment, are as follows:

First, the defendant knowingly used without legal authority a means of identification of another person.

Second, the defendant knew the means of identification belonged to a real person;

And third, the defendant did so during in and in relation to a felony enumerated in 18 United States Code Section 1028A(c).

The crime of wire fraud in violation of 18 U.S.C.

1    Section 1343 is a felony enumerated in 18 U.S.C.

2    Section 1028A(c).

3         If this matter were to proceed to trial, the

4    government would prove the following facts beyond a reasonable

5    doubt:

6         While living in California, defendant devised and

7    executed a scheme to defraud the California Employment

8    Development Department, CEDD, or obtain money or property from

9    CEDD by means of false or fraudulent pretenses, representations

10   or promises.

11        The defendant continued the scheme when she moved to

12   Idaho in April of 2017.

13        As part of the scheme, defendant caused to be filed

14   fraudulent claims for disability insurance benefits with CEDD.

15   These claims were submitted with the identities of real persons

16   without their knowledge or approval.

17        The defendant knew these claimants were real persons.

18   The claim form submitted by the defendant included personal

19   identifying information of a claimant to include names, birth

20   dates, and Social Security numbers.

21        Further, the defendant would list false injuries on

22   the claim forms and use the name and falsify the signature of

23   the physician without their knowledge to substantiate the

24   disability.  These misrepresentations were material.

25        Once a claim was approved by the CEDD, the defendant

received a CEDD debit card in the name of the claimant she was impersonating.  These CEDD debit cards were sent to one of several commercial mailboxes utilized by the defendant in furtherance of the scheme.

The defendant activated the CEDD debit card and established a PIN number for the CEDD debit cards.  Thereafter, the defendant would cause money to be withdrawn from the CEDD debit card at banking institutions in California and/or the District of Idaho.  Each time she withdrew or caused to be withdrawn money from the CEDD debit card, defendant caused an interstate wire transfer from the payee bank.

With respect to Counts 15 and 33, defendant caused to be filed a false claim for benefits with the CEDD.  The defendant knowingly used the identity of J.R. without the knowledge or approval of J.R.  Defendant knew that J.R. was a real person.  This false claim caused the CEDD to part with money in the form of a CEDD debit card in the name of J.R. that was received by the defendant.

On or about July 13th, 2017, defendant caused the money from the CEDD debit card to be withdrawn at U.S. Bank in Meridian, Idaho resulting in an interstate wire transfer therefrom.

Hence, the defendant admits her conduct constituted a wire fraud.  Defendant also admits to aggravated identity theft of J.R. by using the identity of J.R. to further the wire fraud

scheme.   In total, the defendant defrauded CEDD of $475,350.28.

Thank you.

THE COURT:  Thank you.

Ma'am, Count 15, which is the wire fraud charge, carries a maximum possible punishment of up to 20 years and/or a $250,000 fine, and it can be followed by what we might refer to as a second sentence known as supervised release for a period of time of up to three years.

Under supervised release, the Court can impose certain terms and conditions that you must comply with.  Failure to do so could result in your being brought back before the Court and if good cause were not shown, the supervised release could be revoked and you could again be sentenced back to the federal penitentiary.

So as to Count 15, the maximum sentence allowed for by statute would be the 20 years, plus three years, and/or a $250,000 fine.

Do you feel you understand the maximum possible punishment as to Count 15?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, as to Count 33, which is the aggravated identity theft charge, that is referred to as a Class E felony.  By statute it carries a sentence up to two years mandatory minimum and it must be consecutive to the punishment or penalty imposed in Count 15.  By using the word "consecutive,

1     I am talking about on top of, and that is mandatory.

2          It also can include a fine range of up to $250,000,

3     and again, one year of supervised release which could either run

4     concurrent or consecutive to Count 15.

5          So it is the maximum that I've talked about, including

6     the possibility -- well, in fact, Count 33 is a mandatory

7     consecutive sentence.

8          You have gone over that very carefully with counsel

9     and you feel you understand how those two charges run, and the

10    maximum possible punishment that is allowed for by statute?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  Now, having been advised by Ms. Patricco

13    concerning these charges, the elements that have to be proven

14    beyond a reasonable doubt, and what the Government's evidence

15    would be to establish your guilt, and having been advised by the

16    Court concerning the maximum possible punishment that is allowed

17    for by statute, you still have the right to elect to have these

18    matters presented to a jury rather than pleading guilty today.

19         If you made that election, of course, the burden of

20    proof would be upon the government to prove you guilty beyond a

21    reasonable doubt.  That burden never shifts to you.  You enjoy

22    the presumption of innocence and the right to remain silent.

23         What that really means, of course, is the government

24    would have to call its witnesses into the courtroom to testify

25    in your presence so that you, through your counsel, could

1    confront, cross-examine them.

2         You would have a right to bring in witnesses to

3    testify in your own behalf, and if they were reluctant to do so,

4    you could use the subpoena powers of the Court to bring them in.

5    And, of course, you could voluntarily take the witness stand,

6    but you could not be forced to do so because of your

7    constitutional right to remain silent.  If you elected to remain

8    silent, the government cannot comment on that fact in the

9    presence of the jury.

10        You have a right to participate in the selection of

11   the jury and exercise what we call peremptory challenges, up to

12   ten in number.  Peremptory challenges are silent challenges.

13   You don't have to tell the juror or jurors why you are removing

14   them.  And, of course, if there was actual bias or prejudice or

15   some other good cause shown, you could challenge individual

16   jurors or even the panel as a whole to step down.  And if the

17   Court agreed, they would be asked to step down and new jurors

18   would be brought in.  If you were convicted of one or both of

19   these charges you would have a right to appeal.  If you did not

20   have the means with which to retain counsel, the Court would

21   appoint counsel for you.

22        By entering pleas of guilty, you are waiving each and

23   every one of those constitutional rights except for

24   representation by counsel, and the only thing that would remain

25   would be the sentencing hearing itself.

1          Do you feel you understand your constitutional rights?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Is it your desire to waive the same and

4     proceed with this plea hearing today?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  If a person enters a plea of guilty to a

7     felony, the Court orders what we call a presentence report.  The

8     purpose of that report is to advise the Court, as best we can,

9     what disposition should be made in this case.  But because the

10    Court is required to take into account the recommended

11    Sentencing Guidelines as well as the statutory sentencing goals,

12    along with a number of other factors, neither the Court, nor

13    counsel, nor anyone else can tell you exactly what punishment,

14    if any, might be imposed.  And if anyone has made such a

15    prediction, it is just that; a prediction, it is not a promise.

16          Are you aware of that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  The Court necessarily has to take into

19    account all conduct, circumstances, and injuries, if any,

20    associated with your criminal conduct, whether charged or not,

21    or even if the same were dismissed.  It is referred to as

22    relevant conduct.  What that means is the Court is to look at

23    the big picture and to take into consideration anything and

24    everything that bears upon the particular charges to which you

25    would be pleading guilty.  So it is not only mitigating

1    circumstances, it is aggravating circumstances as well.

2         Are you aware of that?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  Parole as you might have understood it in

5    the state system does not exist in the federal system.  So if

6    the Court did, in fact, sentence you to the federal

7    penitentiary, you would have to spend that time, minus good time

8    that you might earn after a period of one year.

9         Are you aware of that?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Now, it probably is not applicable in your

12   case, but there are certain things that tend to cause that

13   recommended Sentencing Guideline range to be a little higher

14   than it might otherwise be, such as a prior felony within the

15   last 15 years, being on probation or parole or some other type

16   of supervision at the time of the commission of these offenses,

17   or having been released from a penitentiary within the last two

18   years.  Those types of things tend to cause that recommended

19   Sentencing Guideline range to be a little higher than it might

20   otherwise be.

21        On the other hand, that recommended Sentencing

22   Guideline range tends to be a little lower if a person pleads

23   guilty early on so the government doesn't have to go to the

24   expense of preparing for trial, being truthful with the Court

25   and presentence investigator, and providing substantial

1      assistance if you are in a position to do so.

2              Are you aware of those matters?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Now, there are certain civil rights that

5      you lose as well as the constitutional rights that I talked

6      about when you plead guilty to a felony.  And they include,

7      among others, the fact that when you have a felony you cannot

8      sit on a jury, you cannot hold public office, you cannot obtain

9      a passport to a foreign country, at least during the term of

10     incarceration and supervision, and it can extend beyond that.

11     You cannot possess a firearm or other dangerous weapon.  And it

12     does affect any voting privileges you might have.

13             Are you aware of that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Now, the Court has before it a document

16     that appears to have your signature thereon.  That is your

17     signature, is it not?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Before you signed that document, did you

20     go over each and every paragraph with your attorney?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Does it accurately state the agreement

23     that you have with the government?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Were you threatened, or coerced, or

1        pressured in any way to sign that document?

2               THE DEFENDANT:  No, sir.

3               THE COURT:  Now, you understand the Court itself did

4        not participate in the plea negotiations.  And while I naturally

5        listen to what you have to say and to what counsel might

6        recommend, if the Court after reading that presentence report

7        that I talked about and considering any other information it had

8        felt that something other than what was being recommended should

9        be done, the Court could do that.

10              Are you aware of that?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  So you understand the Court is not bound

13       by plea negotiations?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  And if the Court did, in fact, impose a

16       sentence other than what you might have expected, that does not

17       give you the right to withdraw your pleas?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Now, you have told the Court that you have

20       read this document and that it correctly states the agreement

21       that you have with the government.  But just to cover a couple

22       of matters for the record, you understand, commencing on page 6,

23       7, and part of 8, there are paragraphs concerning forfeiture.

24             Have you read those paragraphs and gone over them very

25       carefully with counsel so you know what you are obligated to do

1    and what you are giving up or forfeiting?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And you agreed to that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, if you carry out the terms and

6    conditions of this agreement, the government intends to

7    recommend that you be given the appropriate reduction for

8    acceptance of responsibility and that may very well happen.  But

9    again, it is a recommendation, it is not binding on the Court.

10         You are aware of that?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  The agreement provides the loss amount as

13    it relates to Count 15 is a total of $475,350.28.  Did you agree

14    to that sum?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Now, there is another paragraph that

17    concerns Guideline calculations and, again, it may turn out to

18    be just exactly that, but the Court's obligation is to make its

19    own calculation concerning Guideline matters.

20         Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  So you understand the Court is not bond by

23    that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Now, you have agreed not to seek a

1    downward departure or a variance from this agreement unless you

2    notify the government at least 21 days in advance of sentencing

3    of your intent to do so and the reasons and the basis therefore.

4              You agreed to that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  You agreed to cooperate and provide

7    truthful information and assistance as outlined in this

8    document.  And if you do that, the government intends to

9    recommend that you be given the appropriate reduction for

10   acceptance of responsibility.  And again, that may very well

11   happen, but again, the Court has to make its own determination

12   concerning the cooperation.

13             Are you aware of that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Now, if you do that, if you do cooperate

16   and provide that information, the government agrees they will

17   not use that information against you, but, of course, that does

18   not cover information that was previously known to law

19   enforcement agencies or was discoverable by or discoverable

20   through an independent source, in other words, someone other

21   than you, or is for a breach of this agreement.

22             Do you understand that?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Now, it is very important that you

25   understand under this substantial assistance determination on

1    page 12, that you understand that it is the government that

2    makes the determination on whether or not that motion should be

3    filed.  The Court cannot force that to happen.  If the motion is

4    in fact, filed, then it is up to the Court as to whether a

5    departure should be made, and if so, to what extent.

6              Are you aware of that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  You agreed to waive any and all appealable

9    rights, post-conviction writs or other defenses that you

10   otherwise might have been able to raise except for those that

11   are specifically set forth in Part VII of this agreement.  Those

12   are the only exceptions.

13             Did you agree to that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  And you agreed to provide any financial

16   information that is appropriate or necessary in this case?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Now, contrary to what I told you about

19   your not being able to withdraw your pleas, if the Court accepts

20   the same, if you failed to carry out the terms of this

21   agreement, the government, as I mentioned, could withdraw and go

22   forward with these charges or any other charges that were

23   appropriate, and you would have waived any speedy trial rights,

24   any statute of limitation defenses, things of that nature, and

25   the government has the options that are set forth under Part XI

1    of this agreement.

2          Are you aware of that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  So you are not relying on any other terms

5    or conditions than those stated in this Plea Agreement; is that

6    correct?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Now, on page 17 it was brought to my

9    attention you are not a United States citizen; is that correct?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  And that there is the risk of removal from

12    the United States based upon your pleas?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Having been advised by Ms. Patricco

15    concerning these charges, the elements that have to be proven

16    beyond a reasonable doubt, and what the government's evidence

17    would be to establish your guilt, those matters, of course, are

18    contained in the plea agreement as well.

19         Do you agree with those summaries?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  So you admit those facts are true?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And that those facts would sustain a

24    finding of guilty as to each element of each charge beyond a

25    reasonable doubt?

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  Counsel, you also agree there is both a

3    proper factual and legal basis for the entry of pleas as to both

4    charges?

5    MS. WINBERG:  Yes, I do, Your Honor.

6    THE COURT:  You feel you have discussed any and all

7    potential defenses that you are aware of with the defendant?

8    MS. WINBERG:  Yes, Your Honor.

9    THE COURT:  And whether the Court has asked it or not,

10    do you know of any reason why the defendant should not be

11    allowed to enter pleas of guilty to both charges?

12    MS. WINBERG:  No, Your Honor, I do not.

13    THE COURT:  Thank you.

14    The Court is going to accept your pleas.  Whether the

15    Court goes along with the Plea Agreement, of course, will be

16    determined at the time of sentencing.

17    With that understanding, the Court is going to set the

18    date of sentencing for February 21st of 2019 at 11:00 a.m.  The

19    report will be due to counsel on or before January 10.  Any

20    objections must be filed on or before January 24th.  And the

21    final report will be due to Court and counsel on or before

22    February 7th of next year.

23    Ma'am, there will be a presentence investigator

24    visiting with you.  That person is an officer of the court.

25    They do have the means of checking out your information so it is

1    important that you be truthful.  The Court takes everything into

2    consideration right up to the day of sentencing.

3         Once that report has been completed, it will come back

4    to you so that you will have a chance to read it with the

5    assistance of counsel.  If you find there is something in error

6    or wrong in that report, you ask your attorney to file a written

7    objection.  The written objection would go back to the

8    presentence investigator and if they agreed with your objection,

9    they would correct the report right then.

10        If not, your objection and their response will come

11   before the Court at the sentencing hearing and the Court will

12   have to resolve those disputes at that time.

13        You will be given an opportunity to tell me anything

14   you want me to take into consideration by way of mitigation, and

15   you can call witnesses if you choose to do so.

16        Do you have any questions at all?

17        THE DEFENDANT:  No, sir.

18        THE COURT:  What is the government's position

19   concerning incarceration pending sentence?

20        MS. PATRICCO:  Yes, Your Honor.  The government has

21   filed a motion to revoke the defendant's release and for her to

22   be immediately incarcerated at this plea hearing, Your Honor.

23        I have argument, if the Court would allow.

24        THE COURT:  I would like you to do that.

25        MS. PATRICCO:  Thank you, Your Honor.

1    Your Honor, the government filed a motion to revoke

2    release of the defendant.

3    First, I would like to just set out what the legal

4    standard is with respect to the individual remaining outside of

5    custody.  Section 3143A of 18 U.S.C. sets forth the requirements

6    for release or detention of a defendant that has been found

7    guilty and is awaiting sentencing.

8    That section provides, in relevant part, the judicial

9    officer shall order that a person who has been found guilty of

10   an offense and who is awaiting imposition or execution of a

11   sentence be detained unless the judicial officer finds by clear

12   and convincing evidence the person is not likely to flee or pose

13   a danger to the safety of any other person or the community if

14   released under Section 3142B or C.

15   Your Honor, the government submits that the defendant

16   cannot meet her burden of proving by clear and convincing

17   evidence she is not a danger to the community.  Your Honor, in

18   this case it is a 37-count Indictment with numerous acts of wire

19   fraud and aggravated identity theft that covered a range of at

20   least two years.

21   On the day of the defendant's initial appearance, at

22   which she was orally advised by Judge Candy Dale that she must

23   not violate the law while on release, the defendant again

24   committed wire fraud and aggravated identity theft a mere few

25   hours after she was released.

1    Your Honor, the actions in this case, that is the same

2    pattern of behavior that has occurred and is documented in the

3    Indictment as well as in the Plea Agreement that we just read

4    for the Court.  And specifically, with respect to the fraud that

5    occurred mere hours after she was released, was for an

6    individual, the initials are D.J., and the same fraud that

7    occurred was with the California Employment Development

8    Department.  An application for this individual was actually

9    submitted prior to her being arrested.  And at that time D.J.'s

10   true name and Social Security number was used.

11   The claim form claimed that this individual, D.J., had

12   a medical disability that prevented D.J. from working.  And as a

13   result of that filing, the CEDD issued a debit card that was

14   sent to commercial mailboxes that the defendant has used

15   previously to commit fraud and that was received by the

16   defendant.

17   The defendant, as she had done in all of the other

18   cases, established a PIN number for the CEDD debit card, and

19   thereafter went to banks here in Idaho and withdrew money at

20   these financial institutions.

21   We have attached, Your Honor, Attachment B, pictures

22   of the ATM at the ATM where the defendant was withdrawing money

23   from D.J.'s card.

24   Your Honor, the government, through the Department of

25   Homeland Security, found D.J. and interviewed D.J.  D.J. had

1    spoken to officers and said that he had hired the defendant

2    approximately ten years ago to assist in fixing D.J.'s credit.

3    He confirmed that he had never filed any applications with the

4    CEDD for benefits; he did not have the medical conditions that

5    were outlined in the benefit form that is attached as

6    Attachment A; that he never worked at the location that is

7    stated in there; and, he never saw the doctor that is also

8    stated and filled out in the form as Attachment A to the motion,

9    Your Honor; and, he confirmed his name and true Social Security

10   number were used without his permission.

11          Your Honor, despite being indicted on charges of this

12   nearly a week prior, the defendant went out the same day after

13   being advised by Judge Dale not to commit any federal crimes,

14   and commits an additional six acts of wire fraud and aggravated

15   identity theft over the following course of the week.

16          Your Honor, the government submits this defendant is a

17   danger to the community and that her actions and conduct has

18   shown the same.  It shows a complete disregard for the law.  We

19   believe she should be detained at this time, Your Honor.

20          Thank you.

21          THE COURT:  Thank you.

22          Ms. Winberg.

23          MS. WINBERG:  Thank you, Your Honor.

24          Your Honor, before I start I do have just a brief

25   proffer relating to the issue of release before I argue for her

1      continued release, but I would like to clarify I am not

2      disputing necessarily the allegations.

3              I provided to Your Honor the letter from Ms.

4      Robbertse's husband, a letter from her daughters.  Those letters

5      discuss that she is the primary caretaker of three young

6      children during the day, and that includes five-year-old Navaeh.

7      I will put it on the screen.  This is the Ada County judgment

8      appointing her as the guardian, the legal guardian, of this

9      little girl.  So she takes care of her.

10             She also takes care of three-year-old Olivia who is

11     Chantelle's adopted daughter.  Chantelle is currently attending

12     school.  She has classes throughout the day and is starting a

13     new job so Gloudina is taking care of these two young children,

14     in addition to Aiden, who is Gloudina's 11-month-old grandson.

15     Her daughter works during the day, she can't afford to pay for

16     child care for him, and therefore relies on Gloudina.

17             And I think you saw in her letter that were Gloudina

18     to go into custody, this daughter would be unable to continue

19     working because she would not be able to pay for child care for

20     her young son, and that that would be certainly a financial loss

21     to that family.

22             And I would note that that daughter is the individual

23     who is listed as the victim in the offense Gloudina has pled

24     guilty to today.  Gloudina's husband has been working to support

25     the family.  He is in Texas and, therefore, cannot help with the

1    children.

2    Gloudina also has some medical issues.  I think there

3    was a letter included relating to that as well.  She is under

4    the care of a physician.  She has a number of medical conditions

5    as well as treatments that she takes that she requires continued

6    care for.

7    Your Honor, I would also like to proffer Gloudina took

8    a number of steps to dissolve all of her businesses and to close

9    the mailboxes that had been used as part of the offense and I

10   will just go through these.

11   I will start with the mailboxes, and I would like to

12   just note that one of these mailboxes, this first one is, in

13   fact, the mailbox that was listed on the application for J.D.

14   So this is the mailbox that was used in the alleged offense.

15   And on September 18th she is notifying the Mail Mart, where the

16   rented mailbox is, that she would like to shut down the box

17   immediately.

18   And this is, again on September 18th, another mailbox

19   that she is shutting down effective immediately on

20   September 18th.  She also dissolved the businesses that she

21   was -- that she had opened.  This is JHC International.  And

22   that she files on September 24th.  She dissolved Journey

23   America.  This is dissolved on October 30th.  And then

24   International Humanitarian Project is dissolved on October 30th.

25   And at this time she is also talking to clients who

had contacted her and letting them know that she cannot handle

business for them anymore.  She is not accepting new clients.

I have also reached out to the California prosecutor.

He was able to confirm for me the last evidence he had of any

criminal activity was on September 24th.  You have received a

copy of the pretrial status report which otherwise shows very

good adjustment to supervision and meeting with her probation

officer.

I would also like to briefly summarize my engagement

with Gloudina.  It was very clear in my initial conversations

with her that she did not grasp the charges or what the offense

was.  And it really was not until we sat down and reviewed the

discovery and I went over not only the evidence against her but

also how it related to the charges and the elements,

specifically the elements of the offense, that I really felt

like she grasped it and fully understood what she was being

charged with.

Now, she was cooperative, I think, fairly early on

with the government.  They had many meetings, many phone calls

and emails.  I believe she started admitting her participation

in fraud in February of 2018, but there were still some

discrepancies how she saw her actions and how the government saw

it.

She now has a very clear understanding of the case.

We have talked about it and she has accepted responsibility here

today.  She pleaded guilty knowing that the government was
filing a motion to detain her, knowing that she will be facing
mandatory prison, knowing she will have permanent consequences
for her immigration status, and she is also agreeing to provide
assistance to the government.  And during this time frame she
has been collecting records and documents in order to provide
help to them.  In order to summarize the information that she
knows that she believes would be useful and could help the
government in prosecuting other cases and preventing similar
crimes.

So as far as my argument, Your Honor, I don't believe
anyone has raised any issue as to risk of flight.  I think there
is very strong evidence she has ties to the community,
especially taking care of the young children every day.  She
came to court today knowing the consequences, knowing the motion
for detention.  So there is very clear evidence that she would
continue to appear in court if released in the community.

The government's argument is about danger to the
community and that is due to the ATM withdrawals from
September 17th to the 24th.  I don't contest this is evidence of
danger to the community.  However, I do believe that this risk
can be addressed by additional conditions.  At this point the
conditions of release do not require her to provide financial
information, access to requested financial information.  I do
believe that condition should be imposed.

1       In addition, I believe that location monitoring and

2   home confinement would be appropriate.  She would be restricted

3   to her residence at all times except for legal visits, medical

4   appointments, and court appointments and other obligations as

5   approved by the probation office.  These are not on her current

6   conditions of release.

7       So, my request right now, in Subsection T providing

8   the pretrial services office with requested financial

9   information is crossed out.  I believe that should not be

10  crossed out.  If she is continued to be released, that condition

11  should be imposed.

12      I also would believe it would be appropriate to mark

13  Section Q, sub 2, for home detention to put her on location

14  monitoring and restricting her to her residence.  That would

15  certainly assure the Court that she is not leaving her home,

16  that she is not going to ATMs.  That she has, indeed, ceased any

17  criminal activity.

18      In addition, I think that it could be appropriate for

19  the Court to impose, which I know this is something that would

20  be unusual for this kind of case, but in W, not to possess or

21  use a device with access to the internet without prior

22  permission from a pretrial services officer.

23      I think that is a condition the Court can and should

24  consider as far as clear and convincing evidence to show that

25  she would not, in fact, be a danger to the community if that

1    condition were imposed as well.

2          There has been no activity since September 24th.  That

3    was over two months ago.  During this time period, we have had

4    many, many meetings, emails, conversations about the case going

5    over everything in detail.  In the courtroom we see these

6    regularly.  We see a lot of aggravated identity theft, we see a

7    lot of wire fraud and we are familiar with them, but these are

8    complex charges and it can take awhile for someone to understand

9    them, even if that person is educated otherwise.

10          Gloudina signed a Plea Agreement, she prepared to

11    cooperate, she appeared in court today after the guilty plea.

12    You also have her daughter, who is a victim of the offense,

13    asking for her to continue to be released.  So that is a victim

14    seeing her not as a danger, but as someone who assists her in

15    her day-to-day life.

16          Gloudina shut down her businesses, she dissolved them,

17    she closed the mailboxes that were used as part of the fraud.

18    All of this shows she ultimately did accept responsibility and

19    she does understand the case ultimately.  She is focused on

20    resolving her case.  She is focused on doing what she can to

21    provide helpful information to the government.

22          With those additional restrictions, access to her

23    financial information, home confinement, and restricting her

24    access to the internet, the Court can be assured she does not

25    pose a danger to the community.

1          Thank you, Your Honor.

2          THE COURT:  Thank you.

3          Did the defendant wish to make any statement at all or

4     are you just resting on the arguments of your counsel?

5          THE DEFENDANT:  Your Honor, I've made a terrible

6     mistake and I'm not going to say that I didn't do it.  I allowed

7     my own greed to distort, to cloud my own judgment.  And I pulled

8     my children into it and I don't want them to make the mistakes I

9     made to cripple my family.

10          I thought I did everything to shut it all down and be

11     over and done with so that I can.  The government, I said from

12     the beginning I don't want them to waste any more money.  Just

13     ask me and I will tell you what I did so it can be done.  So

14     that I can be forgiven and forgive myself and move on with my

15     life with my children and my husband.

16          THE COURT:  Ma'am, we are not at the point of

17     sentencing at this point.  That will be the time when a lot of

18     other things will be taken into consideration.  The Court has

19     read the letters that were submitted and the Court, having a

20     great deal of experience in sentencing, understands why people

21     feel the way they do and the arguments that they make.  And I

22     know they are sincere in their hearts concerning what they are

23     recommending to the Court.

24          As the government pointed out, in this case the

25     evidence is clear and convincing.  With all due respect, I don't

1　think it is even a close question.  The amount of money and the

2　number of times that these crimes were committed, it would be

3　just not only unwise for the Court to grant your motion, but it

4　certainly wouldn't be fair to the other people that have come

5　before the Court and presented arguments concerning release

6　pending sentence.

7　　　　In this case, even after the fact, as counsel has

8　already pointed out, your conduct has been just inexcusable.

9　You are smart, you have a great education and the standard is by

10　clear and convincing evidence.  And if there is anything that is

11　clear and convincing, it is the fact that even after you had

12　committed these crimes that you were inclined to go further in

13　violating the law.  These are not just thoughts that just

14　happened accidently.  There is time put into it, there is

15　thought put into it and all those matters, of course, will have

16　to be taken into consideration at the time of sentencing.

17　　　　There is never a good time to be incarcerated, but

18　looking at the picture, and counsel have done an excellent job

19　on both sides, but the Court finds by clear and convincing

20　evidence that you do pose a danger to the community, if

21　released, based upon the conduct that followed your charges, the

22　charges against you.  The Court is going to grant the

23　government's motion and you will be remanded to the custody of

24　the Marshals Service forthwith.

25　　　　It is important that you continue to cooperate with

your counsel.  At the time of sentencing there is a great deal
of other information that likely will be presented to the Court
that the Court will have to consider.  But I want you to know
that when things like this happen, it frequently affects a lot
of other people and causes them a great deal of hardship.  That
is one of the reasons that crime is difficult to deal with.

In my judgment, based upon my experience, this is not
even a close question, so you are going to be remanded to the
custody of the Marshals Service.

LAW CLERK:  Your Honor --

THE COURT:  Off the record.

(Off the record.)

THE COURT:  The Court is totally embarrassed.  I just
don't know how I could have overseen actually asking you what
your pleas were, but I have been advised by several sources that
I didn't do it.  So I apologize.  I know we have kind of
concentrated on the issue of whether you would be detained or
not.

But anyway, after you recall all the things that the
Court discussed with you concerning your rights.  And you have
your right, of course, to enter pleas of not guilty and the
matter would be set for trial.  But I am not going to go back
all the way through that.

Again, we are talking about Count 15 and Count 33.
Count 15 is the wire fraud and you recall that I told you about

the 20 years, $250,000 fine, three years of supervised release.
Your counsel I'm sure has followed up with you on that.

But are you in a position to enter either a plea of
guilty or not guilty to that charge?

THE DEFENDANT:  Guilty, sir.

THE COURT:  Guilty?

THE DEFENDANT:  Yes.

THE COURT:  Count 33 is the aggravated identity theft.
The Court explained to you that by statute carries a two-year
mandatory consecutive sentence, meaning on top of any sentence
imposed by the Court on Count 15.

The Court again will ask you, what is your plea to
aggravated identity theft?

THE DEFENDANT:  Guilty, sir.

THE COURT:  Counsel, I want to be sure that I have
given you every opportunity to follow up with any questions you
feel the Court should address.

Do you have any questions at all?

MS. WINBERG:  No further questions, Your Honor.  Thank
you.

MS. PATRICCO:  I think that is all, Your Honor.  Thank
you.

THE COURT:  The Court remands you to the custody of
the Marshals Service.

(Proceedings concluded at 3:13 p.m.)

REPORTER'S CERTIFICATE

I, LISA K. YANT, CSR, RPR, CFRR, certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.

/s/  Lisa K. Yant                    05/04/2020
_____        _____
LISA K. YANT, CSR, RPR, CFRR              Date