UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>GLOUDINA MARIA ROBBERTSE,<br><br>Defendant. | Case No. 1:18-cv-00281-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Gloudina Maria Robbertse's Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 93. The Government has filed an opposition to Robbertse's Motion. Dkt. 94. Robbertse filed a reply and the matter is ripe for the Court's consideration. Dkt. 95.[1]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Second Motion for Compassionate Release.

---

[1] Defense counsel inadvertently missed the deadline for filing a reply, and submitted Robbertse's reply brief one week late, along with a Motion to Submit Materials in Reply to Government's Response. Good cause appearing, the Court GRANTS the Motion to Submit Materials (Dkt. 95) and considers the materials submitted with Robbertse's reply brief herein.

## II. BACKGROUND

On September 11, 2018, a federal grand jury returned a 37-count Indictment charging Robbertse with Conspiracy to Commit Wire Fraud, Wire Fraud, and Aggravated Identity Theft. Dkt. 1.[2] Subsequent to the federal Indictment, Robbertse was charged by Complaint in the Superior Court of California, County of Riverside, with 28 counts of making a false statement in connection with a benefit or payment made under the California Unemployment Insurance Code. Dkt. 84, at 5-6. On September 17, 2018, at Robbertse's initial appearance after her arrest, U.S. Magistrate Judge Candy W. Dale granted Robbertse pretrial release. Dkt. 7. In the days after her release, Robbertse committed six additional acts of wire fraud. Dkt. 84, at 23. On December 6, 2018, Robbertse pled guilty to one count of wire fraud and one count of aggravated identity theft. Dkt. 31. At Robbertse's plea hearing, U.S. District Judge Edward J. Lodge determined Robbertse was a danger to the community due to her post-arrest acts of wire fraud and remanded her to custody. *Id.*

After pleading guilty, Robbertse was subsequently sentenced to 54 months incarceration, followed by 3 years supervised release. Dkt. 60. On May 19, 2020, Robbertse filed a Motion for Compassionate Release, citing her underlying health conditions in conjunction with the COVID-19 pandemic as the primary reason warranting her release. Dkt. 81. Robbertse's First Motion for Compassionate Release was rejected without prejudice on June 16, 2020 after the Court determined that Robbertse had not exhausted

---

[2] Robbertse's daughter, Chantelle Robbertse, was also charged with all 37 counts under the Indictment. *Id.*

her administrative remedies or shown "extraordinary and compelling reasons" warranting a permanent reduction in her sentence. Dkt. 90. After exhausting her administrative remedies—a fact which the Government concedes—Robbertse filed a Second Motion for Compassionate Release on August 4, 2020. Dkts. 93, 94.

### III. LEGAL STANDARD

Robbertse seeks compassionate release under the First Step Act's ("FSA") newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[3] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[4] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

---

[3] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[4] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

# IV. DISCUSSION

## A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Robbertse's First Motion for Compassionate Release was denied after the Court determined that she had not yet exhausted her administrative remedies. Since then, however, the Government concedes that Robbertse has exhausted her administrative remedies. Dkt. 93. As such, the Court finds that this element is met.

## B. Extraordinary and Compelling Reasons

Having determined that Robbertse exhausted her administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Robbertse's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Robbertse bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 3:13-cr-0044-BR, 2020 WL 1673440, at 3 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id.* (explaining that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also*

*United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. §

1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if

references to the identity of the moving party are not").

The Court need not decide the issue, because Robbertse suggests one of the specific

scenarios set out in the Sentencing Commission's policy statement applies in this case.

*Brown*, 411 F. Supp. 3d at 451 (district courts "still must act in harmony with any

sentencing policy guidelines that remain applicable and the § 3553(a) factors"). Robbertse

seeks compassionate release under the "medical condition" scenario in subdivision (A) of

U.S.S.G. 1B1.13, Application Note 1.[5] Robbertse argues that her underlying health

conditions—including psoriasis, psoriatic arthritis, asthma, hypertension, and

hyperlipidemia—in conjunction with the COVID-19 pandemic—constitute extraordinary

---

[5] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

and compelling reasons warranting her release.

The Government concedes that Robbertse's medical conditions—particularly her psoriasis treated with intravenous corticosteroids—put her at an increased risk of contracting a severe case of COVID-19. Dkt. 93 at 4.[6] However, the Government claims that Robbertse has not met her burden of establishing that she would be less at risk if released rather than serving the rest of her sentencing at Dublin. *Id.* The Court must agree.

Multiple courts have denied compassionate release to prisoners, even to those with high-risk medical conditions—where such prisoners would be less susceptible to contracting COVID-19 in prison than if release. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"); *United States v. Shabudia*, 2020 WL 2464751,

---

[6] The Center for Disease Control (CDC) lists individuals with immunocompromised states due to the use of corticosteroids as at a higher risk of contracting a severe case of COVID-19. *At Risk for Severe Illness*, CENTER FOR DISEASE CONTROL (last updated Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

MEMORANDUM DECISION AND ORDER - 7

at *2 (N.D. Cal. May 12, 2020) (denying motion for elderly inmate with high cholesterol; observing that "while the Court acknowledges [defendant's] worries about the spread of COVID-19 in prisons, the facility in which [defendant] is housed currently has no confirmed cases of COVID-19"); *see also United States v. Wright*, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (denying motion for inmate with diabetes, noting, it appears "the BOP has been successful at limiting the spread of the virus within the MCC . . . despite the close proximity of inmates, the BOP is able to impose restrictions on visitors and restrictions on internal movements that are more difficult to impose outside prison walls. There is no reason to believe at this juncture that [defendant] would be at any less of a risk from contracting COVID-19 if he were to be released."); *United States v. Gamble*, 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020) (denying defendant with diabetes compassionate release where the BOP had contained the spread of the virus in the defendant's specific facility); *United States v. Seng*, 2020 WL 2301202, at *6–7 (S.D.N.Y. May 8, 2020) (stating "statistics support the inference that [defendant] would be more at risk of contracting COVID-19 were he released and required to stay in his apartment in Manhattan than he would be by remaining in FCI Allenwood Low," which had no reported cases); *United States v. Guyton*, 2020 WL 2128579 (E.D. La. May 5, 2020) (denying compassionate release to 45-year-old inmate with hypertension where there were no cases of COVID-19 at inmate's facility); *United States v. Shah*, 2020 WL 1934930 (E.D. Mich. Apr. 22, 2020) (denying compassionate release although defendant had diabetes and hypertension because there were no cases at defendant's facility and because the BOP was making efforts to protect inmates).

MEMORANDUM DECISION AND ORDER - 8

Currently, FCI Dublin—where Robbertse is incarcerated—does not have any active positive cases of COVID-19.[7] Conversely, Ada County, where Robbertse would reside if released—and if not remanded to ICE custody—has had nearly 18,000 cases, and Idaho has seen over 67,000 cases. Additionally, on August 7, 2020, the Department of Homeland Security confirmed that they had placed an immigration detainer on Robbertse. Dkt. 94 at 7-8.  Although Robbertse suggests she will oppose deportation and may be able to show she is entitled to a relief or waiver, there is no evidence that such relief is obtainable or even available. Dkt. 93, at 11; Dkt. 95, at 3. Because Robbertse will likely remain in some form of custody upon her release, it cannot be said that she would be at less risk if released from FCI Dublin—where there has been only minimal spread of COVID-19. As such, the Court finds that Robbertse has not met her burden of establishing "extraordinary and compelling reasons" warranting her release.

Finally, the Government asserts that there are compelling reasons *not* to release Robbertse at this time. Specifically, the Government highlights Robbertse's conviction for wire fraud, which caused economic harm to her victims, as well as Robbertse's behavior on pre-trial release. Robbertse was released pending her trial on September 17, 2018. Then, between September 18 and September 24, 2018, Robbertse made an additional six

---

[7]  *Coronavirus*, FEDERAL BUREAU OF PRISONS (last updated Nov. 5, 2020), https://www.bop.gov/coronavirus/. Robbertse argues in her Second Motion for Compassionate Release that even a single positive case at FCI-Dublin "will inevitably infiltrate [her unit], and, by the time someone shows symptoms, it will be too late to prevent [her] infection." Dkt. 93, at 10. This contention is belied by the FCI Dublin's record, as ten inmates and six staff members tested positive for COVID-19 since the Court's Order denying Robbertse' First Motion for Compassionate Release. All sixteen have since recovered and FCI Dublin has no currently positive inmates or staff members. *Coronavirus*, FEDERAL BUREAU OF PRISONS (last updated Nov. 5, 2020), https://www.bop.gov/coronavirus/.

fraudulent withdrawals, totaling over $5,500. The Court agrees with the Government that this conduct poses a risk to the community and supports the denial of Robbertse's motion.

In sum, the Court finds that while Robbertse has exhausted her administrative remedies, she has not met the burden to show that "extraordinary and compelling reasons" exist warranting her release, or that her release is compatible with the policies of the U.S. Sentencing Commission. Accordingly, the Court must DENY Robbertse's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Robbertse's Motion for Extension of Time to File a Reply (Dkt. 95) is GRANTED.

2. Robbertse's Request for a Hearing (Dkt. 95) is DENIED.

3. Robbertse's Second Motion for Compassionate Release (Dkt. 93) is DENIED.

DATED: December 3, 2020

David C. Nye
Chief U.S. District Court Judge